IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>GREAT PLAINS EXPLORATION, LLC,<br><br>Debtor. | Bankruptcy No. 12-10058-TPA<br><br>Chapter 11 |

-----------------------------------------------------------------------------------

**DISCLOSURE STATEMENT TO ACCOMPANY
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN
OF REORGANIZATION DATED SEPTEMBER 22, 2013**

-----------------------------------------------------------------------------------

Robert S. Bernstein, Esq.
BERNSTEIN-BURKLEY, P.C.
707 Grant Street, Suite 2200
Pittsburgh, PA  15219
Tel:  (412) 456-8100

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br><br>GREAT PLAINS EXPLORATION, LLC,<br><br>Debtor. | Bankruptcy No. 12-10058-TPA<br><br>Chapter 11 |

**DISCLOSURE STATEMENT TO ACCOMPANY DEBTOR'S SECOND
AMENDED CHAPTER 11 PLAN OF REORGANIZATION DATED SEPTEMBER 22, 2013**

☐ Chapter 11 Small Business (Check only if debtor has elected to be considered a small business under 11 U.S.C. § 1121(e)).

The Debtor furnishes this disclosure statement to creditors in the above-captioned matter pursuant to Bankruptcy Code § 1125 to assist them in evaluating the proposed *Debtor's Second Amended Chapter 11 Plan of Reorganization Dated September 22, 2013* (the "Plan"), a copy of which is attached hereto. Creditors may vote for or against the Plan. Creditors who wish to vote must complete their ballots and return them to the following address before the deadline noted in the order approving the disclosure statement and fixing time. The Court will schedule a hearing on the Plan pursuant to 11 U.S.C. § 1129.

Capitalized terms not otherwise defined herein shall have the meanings given to them in the Plan.

Address for return of ballots:

Bernstein-Burkley, P.C.
Attn: Oz Ballots
707 Grant Street, Suite 2200
Pittsburgh, PA 15219

**I.    Background**

    1.    Name of Debtor:

        Great Plains Exploration, LLC
        8500 Station Street, Suite 113
        Mentor, OH  44060

    2.    Type of Debtor (individual, partnership, corporation):  Limited Liability Company

    3.    Debtor's Business or Employment:   The Debtor is an Ohio limited liability company in the business of acquiring, exploring, developing, and producing oil and natural gas in northeast

1

        Ohio.  The Debtor also services and maintains wells for other companies and owns gathering pipelines for its wells and for other entities.

4. Date of chapter 11 Petition:   January 11, 2012

5. Events that Caused the Filing:   The Debtor's financial difficulties were the direct result of the drop in the price of natural gas.  As a result of the dramatic drop is gas prices, the Debtor was out of compliance with certain covenants with its secured lender, RBS.

6. Anticipated Future of the Company & Source of this Information and Opinion:

    After the Private Sale of assets, the Debtor will be able to engage in new business ventures alone or in combination with other Osborne-related entities.  The Debtor will be substantially debt-free and out of bankruptcy.

7. Summarize all Significant Features of the Plan Including When and How Each Class of Creditor Will Be Paid and What, If Any, Liens Will Be Retained By Secured Creditors or Granted to Any Creditor Under the Plan:

    This is a reorganizing Chapter 11 Plan.  The Debtor proposes to pay creditors pursuant to the following terms:[1]

    <u>Administrative Claims</u> are not part of a class.  The Debtor will pay all administrative claims, in full, upon the Effective Date unless otherwise agreed by claimant.

    <u>Class 1</u> consists of the Priority Claims.  The Priority Claims shall receive payment in full upon the latter of (a) the Effective Date or (b) five (5) Business Days from the date on which such claim is allowed.

    <u>Class 2</u> consists of the Secured Claims of RBS.  The RBS Settlement Payment amount shall be $10.8 million dollars.  The RBS Settlement Payment shall be paid to RBS on or before December 31, 2013, in full and complete satisfaction of the Oz-GPE Obligation and the John D. Obligation.  If the Private Sale does not close in time to make payment timely of the RBS Settlement Payment by December 31, 2013 (or such date as may be agreed to by RBS), Debtor will pay the RBS Delayed Settlement Payment amount by January 15, 2014.  If neither the RBS Settlement Payment nor the RBS Delayed Settlement Payment is timely paid, RBS shall be entitled to payment of its Allowed Claim on January 16, 2014.

    <u>Class 3</u> consists of all other Secured Claims.   Class 3 consists of all Allowed Other Secured Claims against the Debtor.  The majority of the Other Secured Claims are held by equipment-finance lenders, many of which have been satisfied by Osborne.  Holders of Allowed Other Secured Claims which are secured by Collateral included in the Private Sale will be paid an amount agreed by the Creditor and the Debtor from the proceeds of the Private Sale, for the Collateral sold, or the amount of their claim will be escrowed pending

---

[1]    The Debtor reserves the right to object to the allowance of any Claim, as more fully described in the Plan and/or applicable sections of the Bankruptcy Code.

2

determination by the Court. Holders of Allowed Other Secured Claims which are secured by Collateral <u>not</u> included in the Private Sale shall be granted relief from the Automatic Stay effective 30 days after the private sale, during which time the Debtor and such creditor may reach agreement on an amount to be paid.

<u>Class 4</u> consists of all Allowed General Unsecured Claims against the Debtor. Unless the Debtor and the holder of any such allowed claim agree to a different treatment, each holder of an Allowed Class 4 Claim shall receive 50% of the Allowed Amount, paid within thirty (30) days of the closing of the Private Sale. Holders of Class 4 Claims against the Debtor that are insiders or related-entities shall not receive any distribution on account of their Allowed Claim until such time as other Class 4 creditors have been paid pursuant to the terms of the plan.

<u>Class 5</u> consists of all Equity Interests in the Debtor. The Equity Interest owners will retain their interests in the Debtor.

8. Are All Monthly Operating Statements current and on File with the Clerk of Court?

    ☒ Yes    ☐ No

9. Does the plan provide for releases of nondebtor parties? Yes

    After the Effective Date and after payment of the RBS Settlement Payment or the RBS Delayed Settlement Payment, this Plan shall cause the Osborne Releasing Parties to have released the RBS Releasing Parties from the Osborne Released Claims.

    On the Effective Date, all entities shall be conclusively presumed to have released the following parties following the filing of the Chapter 11 Case (but solely to the extent set forth below): the Debtor (including all present and former members thereof) and its attorneys, accountants, and advisors, from any claim or Cause of Action based on, arising from, or in any way connected with (A) the Chapter 11 Case (including, without limitation, any actions taken and/or not taken with respect to the administration of Estate or the operation of the business of the Debtor); (B) the Plan or the Distributions received thereunder; and (C) the negotiation, formulation, and preparation of the Plan. This is intended to release the Osborne Parties from matters related to the <u>conduct</u> of the Chapter 11 case, not from any personal liability for Claims.

10. Identify all executory contracts that are to be assumed or assumed and assigned.

    The Debtor believes that all unexpired leases and executory contracts have been assumed pursuant to prior Court orders. Any unexpired lease or executory contract not previously assumed or rejected in the Chapter 11 Case will be assumed upon Confirmation.

3

11. Has a bar date been set? (If not, a motion to set the bar date has been filed simultaneously with the filing of this disclosure statement.)

  ☒ Yes    ☐ No

12. Has an election under 11 U.S.C. § 1121(e) been filed with the Court to be treated as a small business?

  ☐ Yes    ☒ No

13. Specify property that will be transferred subject to 11 U.S.C. § 1146(c).

Not applicable.

## II. Creditors

**NOTE: The claims listed herein are as set forth in Proofs of Claim filed by the claimants or by the Debtor in its Schedules of Assets and Liabilities. The Debtor has filed claim objections in connection with disputed claims. The Debtor reserves, and shall have, the right to further object to the allowance of any claim, or portion thereof, pursuant to the terms of the Plan and/or applicable Bankruptcy Law. The amounts listed in this section reflect the Orders sustaining the Debtor's claim objections and any stipulations, consent orders or settlements the Debtor has entered into with any of the claimants. Other filed claims objections have Orders pending.**

## Creditors

**NOTE: The claims listed herein are as set forth in Proofs of Claim filed by the claimants or by the Debtor in its Schedules of Assets and Liabilities. The Debtor reserves, and shall have, the right to object to the allowance of any claim, or portion thereof, pursuant to the terms of the Plan and/or applicable Bankruptcy Law, and the Debtor will file claims objections in connection with any disputed claim.**

A. CLASS 1 -- PRIORITY CLAIMS

| Creditor | Amount Claimed | Type of Collateral |
|---|---:|---|
| Ohio Department of Job & Family Services | $155.48 | N/A |
| Internal Revenue Service | $208.87 | N/A |
| The East Ohio Gas Company | $14,179.22 | N/A |
| Ohio Bureau of Workers Compensation | $26,142.75 | N/A |
| The Ohio Dept of Taxation | $0 | N/A |
| Lake County Treasurer | $161,802.44 | N/A |

**The Following Claims Have Been Previously Satisfied:**

| | | | |
|---|---|---|---|
| Calfee, Halter & Griswold, LLP | $30,195.91 | N/A | |
| Dottore Companies LLC | $246,374.91 | N/A | |

B.  CLASS 2 -- RBS SECURED CLAIM

| Creditor | Amount Claimed | Amount Owed | Type of Collateral | Will Liens Be Retained (Y) (N) |
|---|---|---|---|---|
| RBS Citizens, N.A. d/b/a Charter One | $20,532,453.67 | $10.8 million [2] | Blanket Lien | Yes |
| RBS Asset Finance | $168,000.00 | | Equipment | Yes |
| RBS Asset Finance | $78,203.43 | | Equipment | Yes |
| RBS Asset Finance | $62,933.44 | | Equipment | Yes |

C.  Class 3 -- OTHER SECURED CLAIMS

| Creditor | Amount Claimed | Type of Collateral | Will Liens Be Retained (Y) (N) |
|---|---|---|---|
| SG Equipment Finance USA Corp | $140,000.00 | Equipment | Yes |
| Wells Fargo Equipment Finance | $186,965.31 | Equipment | Yes |
| Wells Fargo Equipment Finance | $377,940.66 | Equipment | Yes |
| Wells Fargo Equipment Finance | $388,044.77 | Equipment | Yes |
| 1st Source Bank | $484,731.14 | Equipment | Yes |
| Ashtabula County Treasurer | $453.71 | Real Estate | Yes |

**The Following Claims Have Been Satisfied:**

| | | | |
|---|---|---|---|
| Lake National Bank | $735.36 | Vehicle | N/A |
| Lake National Bank | $757.15 | Vehicle | N/A |
| Toyota Motor Credit Corp | $1,143.36 | Vehicle | N/A |
| Lake National Bank | $1,983.24 | Vehicle | N/A |
| Lake National Bank | $2,029.67 | Vehicle | N/A |
| Lake National Bank | $2,500.14 | Vehicle | N/A |
| Ford Motor Credit Company | $16,516.14 | Vehicle | N/A |
| Ally Financial | $18,822.75 | Vehicle | N/A |
| Ford Motor Credit Company | $20,024.00 | Vehicle | N/A |
| Ford Motor Credit Company | $21,074.13 | Vehicle | N/A |
| Lake National Bank | $23,626.55 | Vehicle | N/A |
| Ally Financial | $25,633.60 | Vehicle | N/A |
| Lake National Bank | $39,282.33 | Vehicle | N/A |
| Lake National Bank | $44,683.44 | Vehicle | N/A |
| Lake National Bank | $46,399.41 | Vehicle | N/A |
| Caterpillar Financial Services Co. | $56,487.63 | Equipment | N/A |
| First National Bank | $8,584.96 | Vehicle | N/A |
| First National Bank | $15,577.27 | Vehicle | N/A |

---

[2] The $10.8 million amount resulting from the proceeds of the private sale to occur on December 31, 2013 will satisfy, in full, all claims of RBS, including those stemming from Oz-GPE Obligation and the John D. Obligation

| Ally Financial | $17,572.69 | Vehicle | N/A |

    D.  Class 4 -- GENERAL UNSECURED CLAIMS

1. Amount Debtor Scheduled (Disputed and Undisputed)    $3,270,081
2. Amount of Unscheduled Unsecured Claims    $793,205.27
3. Total Claims Scheduled or Filed    $4,063,286
4. Amount Debtor Disputes    $3,488,894
5. Estimated Allowable Unsecured Claims    $752,515.78

## III. Assets

The exact value of the Assets is unknown. The chart below is the Debtor's best estimate at Fair Market Value.

**ASSETS**

| Assets | Book Value | Basis for Value | Fair Market Value | Amount of Debtor's Equity (Value Minus Liens) |
|---|---|---|---|---|
| Cash | $14,496 | Actual | $14,496 | $0 |
| Accounts Receivable | $171,696 | Books & Records | $551,958 | $0 |
| Prepaids | $37,680 | Books & Records | $37,680 | $0 |
| Wells | $4,800,000 | Reserve Report | $4,806,598 | $0 |
| Pipelines | $5,400,000 | Debtor's Opinion | $2,614,802 | $0 |
| Machinery & Equipment | $2,500,000 | Debtor's Opinion | $2,899,225 | $0 |
| **TOTAL:** | **$12,928,872** | | **$10,924,759** | **$0** |

1. Are any assets which appear on Schedule A or B of the bankruptcy petition not listed above?  No.

2. Are any assets listed above claimed as exempt?  No

    If so attach a copy of Schedule C and any amendments.

## IV. Summary of Plan

Effective Date of Plan:    Thirty (30) days after Plan Confirmation and conditions precedent of Section 12.2 of the Plan have occurred.

2. Will cramdown be sought?  No    If yes, state bar date:

3. Treatment of Secured Non-Tax Claims

**SECURED NON-TAX CLAIMS**

| Creditor | Class | Amount Claimed | Summary of Proposed Treatment |
|---|---|---|---|
| RBS Citizens, N.A. d/b/a Charter One | 2 | $20,532,453.67 | The RBS Settlement Payment for all RBS claims resulting from both the Oz-GPE Obligation and the John D. Obligation shall be $10.8 million dollars. This RBS Settlement Payment shall be paid to RBS on or before December 31st, 2013 from the Private Sale Proceeds, in full and complete satisfaction of the Oz-GPE Obligation and the John D. Obligation.[3] |
| SG Equipment Finance USA Corp | 3 | $140,000.00 | Relief from Stay granted effective 30 days after Effective Date. Allowed Claim to be Paid in Amount Agreed to by Creditor and Debtor |
| Wells Fargo Equipment Finance | 3 | $186,965.31 | Relief from Stay granted effective 30 days after Effective Date. Allowed Claim to be Paid in Amount Agreed to by Creditor and Debtor |
| Wells Fargo Equipment Finance | 3 | $377,940.66 | Relief from Stay granted effective 30 days after Effective Date. Allowed Claim to be Paid in Amount Agreed to by Creditor and Debtor |
| Wells Fargo Equipment Finance | 3 | $388,044.77 | Relief from Stay granted effective 30 days after Effective Date. Allowed Claim to be Paid in Amount Agreed to by Creditor and Debtor |
| 1st Source Bank | 3 | $484,731.14 | Relief from Stay granted effective 30 days after Effective Date. Allowed Claim to be Paid in Amount Agreed to by Creditor and Debtor |
| RBS Asset Finance | 3 | $168,000.00 | Included in RBS Settlement |
| RBS Asset Finance | 3 | $78,203.43 | Included in RBS Settlement |
| RBS Asset Finance | 3 | $62,933.44 | Included in RBS Settlement |

**The Following Claims Have Been Satisfied:**

| Creditor | Class | Amount Claimed | Summary of Proposed Treatment |
|---|---|---|---|
| Lake National Bank | 3 | $735.36 | N/A -- Satisfied |
| Lake National Bank | 3 | $757.15 | N/A -- Satisfied |
| Toyota Motor Credit Corp | 3 | $1,143.36 | N/A -- Satisfied |
| Lake National Bank | 3 | $1,983.24 | N/A -- Satisfied |
| Lake National Bank | 3 | $2,029.67 | N/A – Satisfied |
| Lake National Bank | 3 | $2,500.14 | N/A – Satisfied |

---

[3] If the Private Sale does not close in time to make timely payment of the RBS Settlement Amount by December 31, 2013 (or such date as may be agreed to in writing by RBS), Debtor will pay the RBS Delayed Settlement Payment amount by January 15, 2014. The RBS Delayed Settlement Payment Amount is comprised of the RBS Settlement Payment amount of 10.8 million dollars plus $100,000, plus $5,000 for each day after December 31, 2013 until the RBS Delayed Settlement Payment is paid. . If neither the RBS Settlement Payment nor the RBS Delayed Settlement Payment is timely paid, RBS shall be entitled to payment of its Allowed Claim on January 16, 2014.

7

| | | | |
|---|---|---|---|
| Ford Motor Credit Company | 3 | $16,516.14 | N/A – Satisfied |
| Ally Financial | 3 | $18,822.75 | N/A – Satisfied |
| Ford Motor Credit Company | 3 | $20,024.00 | N/A – Satisfied |
| Ford Motor Credit Company | 3 | $21,074.13 | N/A – Satisfied |
| Lake National Bank | 3 | $23,626.55 | N/A – Satisfied |
| Ally Financial | 3 | $25,633.60 | N/A – Satisfied |
| Lake National Bank | 3 | $39,282.33 | N/A – Satisfied |
| Lake National Bank | 3 | $44,683.44 | N/A – Satisfied |
| Lake National Bank | 3 | $46,399.41 | N/A – Satisfied |
| Caterpillar Financial Services Corp. | 3 | $56,487.63 | N/A – Satisfied |
| First National Bank | 3 | $8,584.96 | N/A – Satisfied |
| First National Bank | 3 | $15,577.27 | N/A – Satisfied |
| Ally Financial | 3 | $17,572.69 | N/A -- Satisfied |

4. Treatment of Secured Tax Claims

**SECURED TAX CLAIMS**

| Creditor | Class | Amount Claimed | Summary of Proposed Treatment |
|---|---|---|---|
| Ashtabula County Treasurer | 1 | $453.71 | Allowed Claims to be Paid in Full |
| Lake County Treasurer | 1 | $161,802.44 | Allowed Claims to be Paid in Full |

5. Treatment of Administrative Non-Tax Claims

**ADMINISTRATIVE NON-TAX CLAIMS**

| Creditor | Amount | Type of Debt | Summary of Proposed Treatment |
|---|---|---|---|
| Bernstein-Burkley, P.C. | $200,000 | Professional | Allowed claims and approved professional fees payable of the Effective Date |

**The Following Claims Have Been Satisfied:**

| | | | |
|---|---|---|---|
| Dottore Companies, LLC | $109,633.64[4] | Receiver | This amount was previously satisfied by Receiver Fee Application Settlement |

6. Treatment of Administrative Tax Claims

**ADMINISTRATIVE TAX CLAIMS**

| Creditor | Amount | Type of Debt | Summary of Proposed Treatment |
|---|---|---|---|
| None | | | |

7. Treatment of Priority Non-Tax Claims

**PRIORITY NON-TAX CLAIMS**

| Creditor | Class | Amount Owed | Summary of Proposed Treatment |
|---|---|---|---|
| None | | | |

---

[4] The amount was determined by adding the total amount of the Claim purportedly attributable to this Debtor of $78,656.39 to a one-third share of the total post-petition claim.

8. Treatment of Priority Tax Claims

**PRIORITY TAX CLAIMS**

| Creditor | Class | Amount Claimed | Summary of Proposed Treatment |
|---|---|---|---|
| Ohio Department of Job & Family Services | 1 | $155.48 | Allowed Claim to be Paid in Full |
| Internal Revenue Service | 1 | $208.87 | Allowed Claim to be Paid in Full |
| The East Ohio Gas Company | 1 | $14,179.22 | Allowed Claim to be Paid in Full |
| Ohio Bureau of Workers Compensation | 1 | $26,142.75 | Allowed Claim to be Paid in Full |
| The Ohio Dept of Taxation | 1 | $36,146.43 | Claim Disallowed |

9. Treatment of General Unsecured Non-Tax Claims

**GENERAL UNSECURED NON-TAX CLAIMS – ALLOWED CLAIMS**

| Creditor | Class | Amount Claimed | Percent of Dividend (for Allowed Claims) |
|---|---|---|---|
| 4 Seasons Outdoor Power Equipment | 4 | $847.00 | 50% |
| AGCS Marine Insurance Company | 4 | $9,794.62 | 50% |
| AGGCorp | 4 | $2,649.03 | 50% |
| Airgas USA LLC | 4 | $486.07 | 50% |
| Aqua Ohio, Inc. | 4 | $34.68 | 50% |
| Armen R. Shockey | 4 | $64.19 | 50% |
| AT&T | 4 | $911.92 | 50% |
| Buckeye Mountain | 4 | $47.81 | 50% |
| Central Montana Co-Op | 4 | $6,130.18 | 50% |
| Cintas Corporation #259 | 4 | $760.21 | 50% |
| Colonial Plaza Limited Liability | 4 | $720.86 | 50% |
| Columbus Equipment Company | 4 | $2,487.19 | 50% |
| Convoy Tire and Services, Inc. | 4 | $292.00 | 50% |
| Co-Op Industries | 4 | $5,050.00 | 50% |
| Coulson Compression & Measurement Co. | 4 | $15,007.50 | 50% |
| Dworken & Bernstein, LPA | 4 | $109,719.58 | 50% |
| Electronic Design for Industry | 4 | $3,122.47 | 50% |
| FedEX | 4 | $15.28 | 50%** |
| Hahn Loeser & Parks LLP | 4 | $18,650.50 | 50% |
| Heisley Tire & Brake, Inc. | 4 | $1,067.90 | 50% |
| Herda's Truck Repair Inc. | 4 | $558.70 | 50% |
| Hoover Oil Field Supply | 4 | $3,914.14 | 50% |
| IEBT Corporation | 4 | $70.00 | 50% |
| Illuminating Company | 4 | $69.76 | 50% |
| Interstate Battery System | 4 | $269.85 | 50% |
| McJunkin Red Man Corporation | 4 | $219,481.55 | 50% |
| Mentor Industrial Park Ltd Partnership | 4 | $248.38 | 50% |

| Creditor | Class | Amount Claimed | Percent of Dividend |
|---|---|---|---|
| Mentor Landscape Materials | 4 | $75.00 | 50% |
| Mentor-Bard Properties, LLC | 4 | $153.12 | 50% |
| MIT Enterprises, LLC | 4 | $3,634.19 | 50% |
| Montana State Fund | 4 | $2,645.18 | 50% |
| Montana State Fund | 4 | $4,096.74 | 50% |
| Multi Products Company | 4 | $393.75 | 50% |
| Northeast Ohio Natural Gas | 4 | $1,000.00 | 50% |
| Ohio CAT | 4 | $938.03 | 50% |
| Ohio Environmental Protection Agency | 4 | $7,892.71 | 50% |
| Peachtree Business | 4 | $232.45 | 50% |
| Polen Implement | 4 | $728.48 | 50% |
| Quality Boring & Excavating | 4 | $53,133.00 | 50% |
| SG Equipment Finance USA Corp | 4 | $4,393.05 | 50% |
| Sievers Security, Inc. | 4 | $22.63 | 50%** |
| Signs-n-stuff | 4 | $52.20 | 50% |
| Speedway LLC | 4 | $1,994.80 | 50% |
| Suma Recording | 4 | $12.66 | 50%** |
| The East Ohio Gas Comp. d/b/a Dominion East Ohio | 4 | $3,775.61 | 50% |
| The East Ohio Gas Company | 4 | $82,535.45 | 50% |
| The Ohio Bell Telephone Service | 4 | $2,031.68 | 50% |
| the Ohio Oil and Gas Association | 4 | $35,794.63 | 50% |
| The Travelers Indemnity Co. | 4 | $76,743.68 | 50% |
| Westfield Insurance | 4 | $67,765.37 | 50% |

**GENERAL UNSECURED NON-TAX CLAIMS – CLAIMS DISALLOWED BY COURT ORDER**

| Creditor | Class | Amount Claimed | Percent of Dividend (for Allowed Claims) |
|---|---|---|---|
| Lake National Bank | 4 | $50.50 | 0% |
| Lake National Bank | 4 | $704.42 | 0% |
| Lake National Bank | 4 | $2,510.64 | 0% |
| Lake National Bank | 4 | $3,945.29 | 0% |
| Lake National Bank | 4 | $9,311.49 | 0% |
| PCO-Mayfield | 4 | $23,750.22 | 0% |
| Century link | 4 | $41.09 | 0% |
| Cobra Pipeline Company, ltd | 4 | $1,306.96 | 0% |

**GENERAL UNSECURED NON-TAX CLAIMS – CURED ROYALTY CLAIMS**

| Creditor | Class | Amount Claimed | Percent of Dividend (for Allowed Claims) |
|---|---|---|---|
| Acacia Resources, LLC | 4 | $2,688.04 | Royalty – Cured at 100% |
| Acacia Resources, LLC | 4 | $4,158.13 | Royalty – Cured at 100% |
| Bruce O. Beaty Trustee | 4 | $792.89 | Royalty – Cured at 100% |

10

| | | | |
|---|---|---|---|
| Bruno H. Thut | 4 | $575.58 | Royalty – Cured at 100% |
| C.W. Elliot and Linda Paine | 4 | $350.25 | Royalty – Cured at 100% |
| CAPCO c/p Guggenheim, Inc. | 4 | $1,312.03 | Royalty – Cured at 100% |
| CAPCO c/p Guggenheim, Inc. | 4 | $4,194.64 | Royalty – Cured at 100% |
| Charles L. Graniteo, Jr. | 4 | $270.34 | Royalty – Cured at 100% |
| Charles L. Graniteo, Jr. | 4 | $675.31 | Royalty – Cured at 100% |
| Daniel J. and Ann O'Leary | 4 | $8.38 | Royalty – Cured at 100% |
| Dora Ann Farley | 4 | $52.36 | Royalty – Cured at 100% |
| Elisabeta I. Pastor | 4 | $194.67 | Royalty – Cured at 100% |
| Eye-Will Development | 4 | $2,059.00 | Royalty – Cured at 100% |
| Frank W. Fugman | 4 | $721.21 | Royalty – Cured at 100% |
| Frank W. Fugman | 4 | $2,835.46 | Royalty – Cured at 100% |
| George Lassnick | 4 | $164.98 | Royalty – Cured at 100% |
| George Lassnick | 4 | $514.98 | Royalty – Cured at 100% |
| J.R. Smail, Inc. | 4 | $2,129.78 | Royalty – Cured at 100% |
| J.R. Smail, Inc. | 4 | $3,270.62 | Royalty – Cured at 100% |
| Jiggy, LTD | 4 | $4,203.37 | Royalty – Cured at 100% |
| John Beaver | 4 | $17.16 | Royalty – Cured at 100% |
| Karen J. McDeavitt | 4 | $74.68 | Royalty – Cured at 100% |
| Lake Health | 4 | $155.00 | Royalty – Cured at 100% |
| Lake Health Foundation | 4 | $202,461.22 | Royalty – Cured at 100% |
| Lake Hospital Foundation | 4 | $82,558.92 | Royalty – Cured at 100% |
| Lake Hospital System Inc d/b/a Lake Health | 4 | $90,153.08 | Royalty – Cured at 100% |
| Lake Hospital System, Inc. | 4 | $1,095.07 | Royalty – Cured at 100% |
| Lake Hospital System, Inc. | 4 | $25,041.97 | Royalty – Cured at 100% |
| Madison R.E. Developers, LLC | 4 | $3,860.53 | 0%* |
| Madison R.E. Developers, LLC | 4 | $7,582.94 | 0%* |
| Madison R.E. Developers, LLC | 4 | $11,761.37 | 0%* |
| Midway Industrial Campus Co., Ltd. | 4 | $8,730.04 | Royalty – Cured at 100% |
| Newell Creek Development Company | 4 | $10,190.58 | Royalty – Cured at 100% |
| Newell Creek Preserve, LLC | 4 | $21,278.81 | Royalty – Cured at 100% |
| Paul Hach, II | 4 | $662.63 | Royalty – Cured at 100% |
| Pocahontas Land Corporation | 4 | $61.26 | Royalty – Cured at 100% |
| Roger J. Loecy | 4 | $1,196.76 | Royalty – Cured at 100% |
| Ronald Filson | 4 | $3,640.00 | Royalty – Cured at 100% |
| Ronald Filson | 4 | $310.27 | Royalty – Cured at 100% |
| RT 44, LLC | 4 | $813.87 | Royalty – Cured at 100% |
| Ruth Ellen Brainard | 4 | $52.36 | Royalty – Cured at 100% |
| Sharyn E. Schmidt | 4 | $808.66 | Royalty – Cured at 100% |
| Laura L. Seely | 4 | $345.21 | Royalty – Cured at 100% |
| Springbrook Gardens, Inc. | 4 | $1,141.29 | Royalty – Cured at 100% |
| Springbrook Gardens, Inc. | 4 | $3,709.58 | Royalty – Cured at 100% |
| Steve Calabrese c/o CRM | 4 | $1,779.96 | Royalty – Cured at 100% |
| Steve Calabrese c/o CRM | 4 | $3,929.97 | Royalty – Cured at 100% |
| Steve j. Lovick | 4 | $467.58 | Royalty – Cured at 100% |
| Steve j. Lovick | 4 | $758.97 | Royalty – Cured at 100% |
| Thomas J. Davis | 4 | $50.84 | Royalty – Cured at 100% |
| Thomas J. Davis | 4 | $221.78 | Royalty – Cured at 100% |
| Typro, Ltd. | 4 | $936.38 | Royalty – Cured at 100% |

| | | | |
|---|---|---|---|
| Typro, Ltd. | 4 | $1,569.68 | Royalty – Cured at 100% |
| Typro, Ltd. | 4 | $9,523.03 | Royalty – Cured at 100% |
| United States Endoscopy Group | 4 | $200.48 | Royalty – Cured at 100% |
| Vrooman Road Development | 4 | $21.61 | Royalty – Cured at 100% |
| W&W Construction | 4 | $5,262.68 | Royalty – Cured at 100% |

**GENERAL UNSECURED NON-TAX CLAIMS – INSIDER CLAIMS**

| Creditor | Class | Amount Claimed | Percent of Dividend (for Allowed Claims) |
|---|---|---|---|
| Beth Ann Osborne | 4 | $1,709.37 | 0%* |
| Big Oats Oil Field Supply | 4 | $64,759.25 | 0%* |
| Greg Osborne | 4 | $90.43 | 0%* |
| John D. Oil and Gas Company | 4 | $29,378.61 | 0%* |
| John D. Oil and Gas Company | 4 | $399,153.28 | 0%* |
| John D. Oil and Gas Marketing | 4 | $3,593.45 | 0%* |
| John D. Oil and Gas Marketing | 4 | $1,240,345.15 | 0%* |
| John D. Resources, LLC | 4 | $130,521.02 | 0%* |
| Mentor Energy Resources | 4 | $4,374.41 | 0%* |
| Mentor Energy Resources | 4 | $16,172.26 | 0%* |
| Nathan Osborne | 4 | $179.49 | 0%* |
| Nathan Osborne | 4 | $600.07 | 0%* |
| Orwell Natural Gas | 4 | $121,732.00 | 0%* |
| Orwell-Trumbell Pipeline Company | 4 | $381,578.35 | 0%* |
| OsAir, Inc. | 4 | $6,587.87 | 0%* |
| OsAir, Inc. | 4 | $8,200.22 | 0%* |
| Richard M. Osborne | 4 | $11,356.83 | 0%* |
| Richard M. Osborne, Jr | 4 | $682.22 | 0%* |
| Richard M. Osborne, Sr. | 4 | $21,733.98 | 0%* |
| Richard M. Osborne, Sr. | 4 | $29,718.56 | 0%* |
| Richard M. Osborne, Trustee | 4 | $322.56 | 0%* |

\*       **Claims of insiders and related-entities will not receive any distribution pursuant to the terms of the Plan unless and until other unsecured creditors are paid pursuant to Plan terms.**

\*\*      **De minimus claims of less than $25.00 are not payable under the terms of the Plan.**

10.     Treatment of General Unsecured Tax Claims

**GENERAL UNSECURED TAX CLAIMS**

| Creditor | Class | Amount Owed | Summary of Proposed Treatment |
|---|---|---|---|
| Ohio Department of Taxation | 1 | $36,146.43 | Claim Disallowed |
| Internal Revenue Service | 1 | $208.87 | Allowed Claims Paid in Full |

12

11. Will Periodic Payments be made to unsecured creditors?

☐ Yes  ☒X  No

Other significant features of the plan:

The Class 2 Claims of RBS shall be paid as follows:

1. The RBS Settlement Payment amount shall be $10.8 million dollars.
2. The RBS Settlement Payment shall be paid to RBS on or before December 31, 2013, time being of the essence, in full and complete satisfaction of the Osborne Released Claims, including the Oz-GPE Obligation and the John D Obligation.
3. Upon timely payment of the RBS Settlement Payment or timely payment of the RBS Delayed Settlement Payment, all Osborne Released Claims shall be fully released and discharged, including, without limitation, claims against the Debtors and Richard M. Osborne.
4. If the Private Sale does not close in time to make payment timely of the RBS Settlement Payment by December 31, 2013 (or such date as may be agreed to in writing by RBS), Debtor will pay the RBS Delayed Settlement Payment amount by January 15, 2014.
5. If neither the RBS Settlement Payment nor the RBS Delayed Settlement Payment is timely paid, RBS shall be entitled to payment of its Allowed Claim on January 16, 2014.
6. RBS shall maintain its lien on the assets of the Debtor until timely payment of the RBS Settlement Payment or timely payment of the RBS Delayed Settlement Payment is made.

Include any other information necessary to explain this plan:    Not applicable

## V.  Comparison of Plan with Chapter 7 Liquidation

If the proposed Plan is not confirmed, the potential alternatives would include a proposal of a different Plan, dismissal of the case, or conversion of the case to Chapter 7.  If this case is converted to Chapter 7, a Chapter 7 Trustee will be appointed to liquidate the Debtor's non-exempt assets and will be entitled to a significant statutory fee, which would be paid in full before any distribution is made to other claimants.  Additionally, all secured claims and priority claims, including all expenses of administration, must be paid in full before any distribution is made to unsecured claimants.

Total value of Chapter 7 estate (See Section III)        $ 1,683,891
1. Less secured claims  (See Section IV-2)              $ 22,581,528 (est.)
2. Less administrative expenses (See Section IV-3
   and include approximate Chapter 7 expenses)          $    340,000
3. Less other priority claims  (See Section IV-4)       $     40,686.32

Total Amount Available for Distribution to Unsecured Creditors    $0

Divided to total allowable unsecured claims (See Section II C)    $0

13

Percentage of Dividend to Unsecured Creditors: 0%

Will the creditors fare better under the Plan than they would in a Chapter 7 liquidation?

☒ Yes   ☐ No

Explain: In a Chapter 7 liquidation, a Chapter 7 Trustee would be appointed. The Chapter 7 Trustee would be entitled to the statutory fee which would further diminish any distribution to creditors. In the Chapter 11 context, the Debtor is allowed to continue operating and generating revenue sufficient to pay a significant dividend to creditors.

## VI. **Feasibility**

   A. Attach Income Statement for Prior 12 Months
   B. Attach Cash Flow Statement for Prior 12 Months
   C. Attach Cash Flow Projections for Next 12 Months

Estimated amount to be paid on effective date of the Plan, including administrative expenses:

$752,515.78

Show how this amount was calculated.

| | |
|---|---|
| Administrative Class: | $ 340,000 |
| Taxes: | $ 202,942.47 |
| Unsecured Creditors: | $ 752,515.78 |
| UST Fees | $   1,658 |
| TOTAL | $1,297,116.20 |

What assumptions are made to justify the increase in cash available for the funding of the Plan?

The Assets of the Estate will vest or re-vest in the Reorganized Debtor on the Effective Date. The Debtors have negotiated a private sale of the certain assets consisting principally of Debtors' mineral leases, wells, pipelines and related (well operating) equipment for a price sufficient to pay all of the Debtors' obligations under their respective Plans. An Asset Purchase Agreement covering the Private Sale will be filed with a Supplement to the Disclosure Statement at least ten (10) days in advance of the hearing on Approval of the Disclosure Statement. Until it has received final, internal approval for the transaction, the buyer is unable to be disclosed in time to meet the Court's September 23 deadline for the filing of this Plan.

The Private Sale is expected to close not later than December 31, 2013 in order to permit timely remittance of the RBS Settlement Payment. Out of an abundance of caution, this Plan provides for a possible delay of fifteen days, resulting in the RBS Delayed Settlement Payment, providing a significant incentive for the Debtors to close on the Private Sale on or before December 30, 2013.

The Private Sale, pursuant to this Plan, will be free and clear of all claims, liens and encumbrances of creditors. Although this Plan will implement the Private Sale, the Debtors also intend to file a Motion for Sale to provide the clearest notice to creditors and parties in interest.

The Private Sale will not permit competitive bidding, as it is a Private Sale. Since the sale proceeds will be sufficient to pay all Allowed Claims and payments required by the Plans, no creditor or party in interest (other than Insiders) has any interest in a higher price being paid. RBS asserts a senior lien on substantially all of the assets of the Debtors and would be the only party to arguably stand to benefit from a higher sale price. The Plan assumes that RBS accepts the Plan.

Unless the Private Sale does not occur as a result of the failure of the Private Sale Buyer to participate (or close), and unless the Private Sale Buyer is the purchaser of the Well Assets at the Public Sale, the Private Sale Buyer shall be entitled to its reasonable expenses of sale and due diligence, provided it can demonstrate to the Court that its efforts benefitted the Estates.

Will funds be available in the full amount for administrative expenses on the effective date of the Plan?

Yes. Administrative claims will paid on the Effective Date from the Private Sale proceeds, unless otherwise agreed.

## VII.  Management Salaries

**MANAGEMENT SALARIES**

| Name / Position | Salary on Petition Date | Proposed Salary |
|---|---|---|
| Richard M. Osborne / Managing Member | $0.00 | $0.00 |

## VIII.  Identify the Effect on Plan Payments and Specify Each of the Following:

1. What, if any, Litigation is Pending?   None

2. What, if any, Litigation is Proposed or Contemplated?

    The Debtor has filed numerous objections to claims and pursued various claims and causes of action. Pursuant to Section 1123(b)(3)(B) and subject to the provisions of its Second Amended Plan, upon entry of the Confirmation Order, the Reorganized Debtor retains the right to object to all Claims and interests asserted against the Reorganized Debtor. The Reorganized Debtor retains the right to prosecute all of the Debtor's Estate Litigation, subject to the provisions of Article VII of its Second Amended Plan, including without limitation: (1) Recovery actions under Section 547 of the Bankruptcy Code against those parties receiving payments from the Debtor within 90 days or one year prior to the Petition Date, (2) All claims and Causes of Action disclosed in the Debtor's schedules and Statement of Financial Affairs which are incorporated herein by reference; (3) any and all claims and

15

Causes of Action that the Debtor held pre-confirmation including, but not limited to, claims for unpaid accounts receivable and fraudulent transfer shall vest or revest in the Reorganized Debtor except as otherwise provided in the Second Amended Plan.

Unless a claim or Cause of Action against a creditor or other entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtor expressly reserves such claim or Cause of Action for later adjudication (including without limitation, claims and causes of action not specifically identified or which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances which may change or be different from those which the Debtor now believes to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the confirmation of Debtor's Second Amended Plan based on this Disclosure Statement, the Plan or the Confirmation Order, except for such claims or Causes of Action have been released in the Plan or any other Final Order.

## VIII. Certification

The undersigned hereby certifies that the information herein is true and correct to the best of my knowledge and belief formed after reasonable inquiry.

If Debtor is a corporation, attach a copy of corporate resolution authorizing the filing of this Disclosure Statement and Plan.

If Debtor is a general partnership, attach a copy of the consent agreement of all general partners to the filing of the bankruptcy.

Dated: September 22, 2013         */s/ Richard M. Osborne*_____
                                  Richard M. Osborne
                                  **Managing Member**


                                  */s/ Robert S. Bernstein*_____
                                  Robert S. Bernstein (PA ID #34308)
                                  **Counsel to the Debtor**

### GREAT PLAINS EXPLORATION, LLC

### ACTION BY WRITTEN CONSENT OF MANAGER AND MEMBER

The undersigned, being the majority of the Members of Great Plains Exploration, LLC, an Ohio limited liability company (the "Company") hereby adopts the following resolutions by majority consent on September 22, 2013, as permitted by Section 1705-25 of the Ohio Limited Liability Company Law, with the same force and effect as though such resolutions had been adopted by a vote of all of the Members of the Company.

BE IT RESOLVED, that the Managing Member of this Company, Richard M. Osborne (the "Manager"), on behalf of this Company is hereby authorized to file and direct Bernstein-Burkley, P.C. to file (i) the Company's (Debtor's) Chapter 11 Second Amended Plan of Reorganization Dated September 22, 2013 (the "Plan"); (ii) the Amended Disclosure Statement relating to the Plan; and (iii) all other documents and instruments described in or contemplated by the Plan and Disclosure Statement an d such other documents as the Manager shall deem reasonably necessary to accomplish the terms and conditions of the aforementioned Plan in connection with the Company's Chapter 11 bankruptcy (collectively, the "Plan Documents"); and

BE IT FURTHER RESOLVED, that the Plan and Disclosure Statement, with such changes as the Manager in its discretion deems appropriate, are hereby approved; that the Manager is hereby authorized to execute and deliver the Plan Documents on the Company's behalf and in its name with such changes, modifications and additional terms as the Manager in its discretion deems appropriate, the approval of such changes, modifications and additions to be conclusively evidenced by the execution and delivery of the Plan Documents by the Manager; and that the Plan Documents shall be the valid obligation of and binding upon the Company in the form and content in which they are so executed and filed with the United States Bankruptcy Court for the Western District of Pennsylvania (the "Court"); and

RESOLVED, FURTHER, that the delegation of the power and authority to the Manager in the immediately preceding resolution is intended to be the fullest extent permitted by law and the Certificate of Organization and Operating Agreement of the Company; and

RESOLVED, FURTHER, that the Manager may certify to the Court or any person, firm or corporation having an interest that the foregoing resolutions are in conformity with the Certificate of Organization and Operating Agreement of the Company and may also certify to any such person, firm or corporation the text and due adoption of the foregoing resolutions, and the incumbency and true signatures of the Manager; and

RESOLVED, FURTHER, that the Manager, on behalf of the Company, under its company seal or otherwise, is hereby authorized to take such other action, to make, enter into, execute, deliver, file and record any and all further agreements, documents and instruments, and to take any and all other actions as may be necessary or advisable to carry out the purposes of the foregoing resolutions, the Plan and the transactions contemplated thereby, the taking of any such actions to constitute conclusive evidence of the exercise of such discretionary authority.

IN WITNESS WHEREOF, I hereby certify that these Resolutions were duly adopted by the majority consent of the Members on September____, 2013, and said Resolutions have not in any way been modified, rescinded or revoked and are in full force and effect as of September ___, 2013.

GREAT PLAINS EXPLORATION, LLC

By: _____
Richard M. Osborne, Managing Member