©2015 Guaranteed Contract

# Cincinnati Industrial Auctioneers, Inc.
## Standard Form Auction Contract – with Price Guarantee

This Agreement ("Agreement") is made and entered into as of this _11_ day of _March_ 2015, (the "Effective Date") by and between Cincinnati Industrial Auctioneers, Inc., an Ohio corporation whose principal place of business is at 2020 Dunlap Street, Cincinnati, Ohio 45214 (hereinafter "Auctioneer"), and Guy C. Fustine, Chapter 11 Trustee, whose principal place of business is 120 West Tenth Street, Erie, Pennsylvania 16501 (hereinafter "Owner") for certain assets (as defined herein) located at Oz Gas, LTD. / Great Plains Exploration, LLC / John D. Oil & Gas Company, Mentor, Ohio; Tidioute, Pennsylvania; and, Winifred, Montana locations.

Recital:
Owner desires to sell by auction and Auctioneer desires to conduct for Owner the auction of the Assets (as defined herein). The purpose of this agreement is to set forth the terms and conditions of such auction.

Witnesseth:
NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which Owner and Auctioneer herewith expressly acknowledge, Owner and Auctioneer agree as follows:

Obligations of Auctioneer. Auctioneer has knowledge of prospective purchasers' names, addresses and interests, who can be considered likely to be interested in purchasing the Assets. Auctioneer, shall catalogue and inventory the Assets, will send notices and information to prospective purchasers, will place advertising in appropriate journals, newspapers and magazines within the limits set forth herein. Owner shall reimburse Auctioneer for advertising, promotion and expenses of sale, whether such sale is by auction or in bulk, in an amount not to exceed $50,000.00. Auctioneer shall furnish supervisory personnel as may be necessary to prepare the Assets for sale and such other bookkeepers, clerks, stenographers and auctioneers which Auctioneer determines are necessary. All other labor and expenses for maintenance, freight, major equipment repair and security of the Assets shall be furnished and/or provided by Owner. Auctioneer will be responsible for minor equipment repairs up to $2,500. Auctioneer agrees to collect a reasonable deposit at the time of sale (usually 10%) and the balance of the purchase price at the time of removal of the purchased assets from the Premises by the purchaser at auction. The auction shall commence within forty-five (45) days after Court approval of the Auction Contract and continue thereafter as such schedule and locations may be determined by Auctioneer. Auctioneer shall provide a complete and accurate accounting of all material aspects of the sale within fifteen (15) business days following such sale. The proceeds of the sale shall be immediately paid to Owner along with such accounting, however, Auctioneer shall deduct the fees and reimbursements provided herein from the amounts to be paid to Owner. Auctioneer guarantees that the net proceeds from the sale of all of the Assets shall **net the Owner $1,550,000.00** before the expenses to be paid by Owner as provided for herein. After reimbursement to Auctioneer of guaranteed proceeds paid to the Owner and payment of expenses to the Auctioneer as provided herein, Owner and Auctioneer shall share the excess, if any, **with 90% to Owner and 10% to Auctioneer up to $1,800,000.00**. Any excess of $1,800,000.00 the owner shall retain 100%. Auctioneer shall charge and retain a ten (10%) percent purchasers premium for onsite auction buyers and a thirteen (13%) for webcast auction buyers on the gross sales at auction or bulk sale. The Auctioneer reserves the right to joint venture the Auction with a firm of Auctioneers' choosing, but only with the Trustee's consent not to be unreasonably withheld. Also, the Trustee has the right to add additional items to the sale with respect to which the Auctioneer may charge the purchaser's premium(s) as provided herein, but there shall be no other commission paid to Auctioneer with respect to the additional items.

Deposit Agreement; Escrow. Auctioneer shall pay a deposit in the amount of $155,000.00 ("Deposit"). Terms relating to the Deposit continue on Page 2 hereof. Balance of purchase price $1,395,000.00 one day prior to auction in immediately available funds (e.g. confirmed receipt of a wire transfer).
**The terms and conditions of this Agreement continue on the 3 pages that follow. Signatures on the face of this Agreement constitute agreement to the terms and conditions set forth in this entire Agreement.**

This Auction Contract with Price Guarantee is subject to Bankruptcy Court approval, after notice and hearing, in the United States Bankruptcy Court for the Western District of Pennsylvania at Erie, the Honorable Thomas P. Agresti, United States Bankruptcy Judge ("Bankruptcy Court").

IN WITNESS WHEREOF, Owner and Auctioneer have set their respective hands below as of the Effective Date.

Auctioneer: Cincinnati Industrial Auctioneers, Inc.             Guy C. Fustine, Chapter 11 Trustee
By: _[signature]_                                               By: _[signature]_
Its: _President_                                                Its: _Chapter 11 Trustee_



Escrowee:
Name: Guy C. Fustine    Address: 120 W. 10th St., Erie, PA 16501

I agree to serve as Escrowee in accordance with the terms of this Agreement.

Signature:    By: Guy C. Fustine, Chapter 11 Trustee

Definitions. Some of the defined terms of this Agreement are defined as follows:
"Assets" shall mean: (i) such assets as may be specifically described on Schedule 1(a) hereto; or (ii) unless otherwise set forth on Schedule 1(a) hereto, all assets located on the Premises and owned by Owner or in which Owner has any right or interest as of the Effective Date, which are not being used in the operation of the businesses in Chapter 11. Such Assets shall include the changes and additions, if any, thereto (but not deletions therefrom) as may occur from the Effective Date to the date of Closing in the ordinary course of business of Owner and consistent with the terms and conditions of this Agreement (collectively, "the Assets"). The list of Assets will be finalized at or before the time of the hearing for Bankruptcy Court approval of the auction sale. The amount of the guarantee is subject to good faith renegotiation in the event that items are removed from the list of assets to be sold. Whether or not a description of the Assets is set forth on Schedule 1(a) hereto, such Assets shall include any and all tangible or intangible assets used directly in connection with any of the Assets, including, without limitation: available instruction manuals, repair manuals, warranties, literature, tools, attachments, dies, jigs, patterns, computer software, spare or replacement parts, supplies and consumables, electrical controls, and dust collection equipment. The Auctioneer shall have the right, which may be exercised in its sole discretion, to decline to sell any of the Assets, if, in Auctioneer's belief such sale would expose Auctioneer or Owner, or both, to a claim of liability by any person as a result of such sale, and as to such declined Asset(s), Auctioneer shall not have any further duties in respect thereto. In such case, the price guarantee shall be equitably reduced by the value of such declined Asset(s). "Premises" means the business premises of Owner described above or such other business premises, if any, as are described on Schedule 1(b). "Purchaser at auction" shall mean a person or entity acquiring all or any part of the Assets at auction or by a bulk sale. "Hazardous Substance" means any substance or waste containing hazardous substances, pollutants or contaminants as those terms are defined in the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § U.S.C. 9601 et seq., and any other substance similarly defined or identified in any other federal, state or local laws, rules or regulations governing the manufacture, import, use, handling, storage, processing, release or disposal of substances or wastes deemed hazardous, toxic, dangerous or injurious to public health or to the environment.

Deposit Agreement: Escrow. The following terms apply to the Deposit referred to on Page 1 hereof. Such Deposit shall be paid to the escrow agent, if any, named herein, as escrowee hereunder, upon the execution of a counterpart of this Agreement by the escrow agent. If no separate escrow agent is named herein, then the Deposit shall be paid to the Owner who shall serve as the escrow agent. (In either event, the Deposit will be held subject to the terms of this Section and the holder of such funds shall be referred to herein as "Escrowee"). After the auction sale, the Escrowee shall deliver the deposit to Owner upon the conveyance of the Assets to purchasers at auction and the settlement due Owner from the sale shall be reduced by the amount of such payment; however, in the event that the Auctioneer notifies Escrowee that an event of default by Seller has occurred and such default has continued after fifteen (15) days written notice to Seller, Escrowee shall immediately pay over the full amount of the Deposit to Auctioneer; or, immediately file a motion for the Bankruptcy Court to decide the issue. Pending the payment to Owner or return of the escrowed funds, as the case may be, Escrowee shall at all times maintain the escrowed fund in a separate bank account or attorney escrow account, in trust, and shall not commingle the escrowed fund with any other funds of the Escrowee. Any escrowee (other than Owner) shall have no duties or obligations except as expressly set forth above. Escrowee shall not be liable to either Owner or Auctioneer for any act or failure to act except for Escrowee's failure to return or pay over the escrowed funds or for Escrowee's willful misconduct, if any. Owner and Auctioneer agree to indemnify and hold any Escrowee other than Owner harmless from any loss, claim, liability, cost or expense, including reasonable attorney's fees incurred by any Escrowee other than Owner in connection with any claim arising out of or related to Escrowee's duties hereunder.

Sale and Purchase of Assets Without Reserve Free and Clear of Liens. The Assets shall be offered for sale and sold to the highest qualified bidders without limit or reserve; provided, however, the assets may be sold in one bulk transaction upon notice to Owner. Owner shall assign, convey, deliver, sell and transfer to purchasers at auction, all rights, title and interests of Owner in and to the Assets, which shall be conveyed to such purchasers free and clear of any claim, encumbrance, lien, mortgage, pledge, security interest or any other interest of any kind or nature. The assignment, conveyance, delivery, sale and transfer of the Assets shall be effected by a bill of sale, with trustee warrant covenants, from Owner to such purchasers and all such other bills of sale, assignments, consents, endorsements, releases, terminations and other instruments in such form and substance as Auctioneer may reasonably request.

Buyers' Premium; Commissions Earned on Subsequent Sales; Sales by Owner; Casualties. Auctioneer shall charge and retain a retain a ten (10%) percent purchasers premium for onsite auction buyers and a thirteen (13%) for webcast auction buyers on the gross sales at auction or bulk sale. Such premium shall not be taken into account for purposes of determining the price guarantee nor in determining the amount of any percentage split of net proceeds as between Owner and Auctioneer set forth on page 1 of this Agreement. If any of the Assets are sold, transferred or conveyed by Owner, or any other person, with or without the consent of Owner, after the date of execution hereof or Bankruptcy Court approval of the auction, whichever is later, or withdrawn from sale by Owner, such part of the Assets shall be considered as having been sold by Auctioneer for purposes of the guarantee and one-half of the buyer's premium in the amount of five (5%) percent of the purchase price (or in the absence of a purchase price, five (5%) percent of the fair market value thereof) shall be due and payable to Auctioneer. In the event that any or all of the Assets are damaged or destroyed by fire, theft, flood, other casualty, or any loss covered by insurance or subject to any other recovery, then, in such event,

the guarantee of proceeds from the sale shall be null and void and Auctioneer shall be entitled to receive a commission of five (5%) percent of the proceeds of such insurance or other recovery. No credit bids by secured creditors will be allowed at the auction.

<u>No Liabilities Assumed.</u>    Except as expressly set forth in this agreement, neither Auctioneer nor any purchaser at auction assumes any liabilities, debts, or contractual obligations of the Owner. Should any liability of Owner, whether known or unknown, contingent or not contingent, existing at the time of the auction sale or thereafter at any time be asserted against Auctioneer or such purchasers whether or not such claim is well founded, under any theory, including, without limitation, that Auctioneer or such purchasers are a successor to Owner, that all or any part of the Assets are subject to such liabilities, debts, or contractual obligations, that there is a security interest in the Assets securing any liabilities, debt, or contractual obligations of Owner, that there has been a fraudulent conveyance of the Assets or otherwise, then in such event, Owner shall indemnify and hold Auctioneer harmless from any loss, claim, liability, cost or expense in connection therewith.

<u>Auctioneer's Auction Sale on Owner's Premises</u>. This Agreement contemplates that the Assets will be sold by Auctioneer at an auction sale on the Premises of Owner ("Auction Sale"). As to the Auction Sale, Auctioneer and Owner agree as follows: Auctioneer will use its phone and fax numbers in all advertising the Auction Sale, however, should Owner receive any inquiries regarding the Auction Sale, all pre-auction inquiries shall be immediately referred to Auctioneer. Auctioneer shall be responsible for the cost and preparation of any and all of its advertising and brochures. Auctioneer may use the name, logo and location of Owner in such advertising and brochures to advertise the sale consistent with trade practices in the auction business. Auctioneer may not use the phrase "going out of business" , or any similar phrase, when describing the sale. Auctioneer shall have the absolute right to determine all of the terms of such Auction Sale and Owner shall cooperate with Auctioneer in all commercially reasonable respects. The Auction Sale shall be held at the Owner's Premises. The Auctioneer shall be entitled to cost-free use(including utilities) of such portions of the Owner's Premises as are reasonably necessary for the preparation of the Assets pending the Auction Sale, the conduct of the Auction Sale itself and the loading and shipment of the Assets following the Auction Sale. In the absence of an agreement to the contrary, Auctioneer shall use all of the Premises during Auctioneer's regular business hours for the period beginning on the Effective Date and continuing for **90 days thereafter**. All labor and expenses for renovation, maintenance and security of the Premises shall be furnished and/or paid for by Owner. Auctioneer's representative shall remain on the Premises for ten (10) days to oversee the removal of Assets sold at auction, after which time such overseeing shall be the sole responsibility of Owner. A maintenance person provided by Owner shall be available at all times to facilitate the removal of Assets sold at auction. If the Premises are leased, the Owner shall provide a Landlord Occupancy Agreement, signed by the Landlord(s), in the form provided by the Auctioneer; or, in the absence thereof, a signed court order providing the Auctioneer with access to the premises.

<u>Independent Contractor</u>. The parties hereto agree and acknowledge that the Auctioneer is an independent contractor and not a partner of the Owner and that neither party has the authority to act for or on behalf of the other or to bind the other to any contract on any matter. The Auctioneer and the Owner agree that the relationship created by this Agreement is that of independent contractor and not that of employee and employer. Each party is responsible for the payment of their respective taxes, including, without limitation, all federal, state and local personal and business income taxes, sales and use taxes, other business taxes and license fees. Each party shall bear the cost and obligation to provide their respective employees unemployment and workers' compensation benefits or insurance coverages.

<u>Representations, Warranties and Agreements of Owner</u>. Owner represents and warrants to, and agrees with, Auctioneer as follows: Owner is the Chapter 11 Trustee for the business corporation duly organized, under the laws of the State of its domicile. Owner has full power and authority to own all of the Assets and is duly qualified to do business and is in good standing in every jurisdiction in which any of such Assets are located or titled. The execution, delivery and performance of this Agreement by Owner has been duly authorized. No further corporate action will be necessary on the part of Owner or the shareholders of Owner to make this Agreement valid and binding on Owner and enforceable against Owner. In accordance with applicable federal bankruptcy law, the execution, delivery and performance of this Agreement by Owner (I) is not contrary to the articles of incorporation or the code of regulations and or by-laws of Owner, (ii) does not now and will not, with the passage of time, the giving of notice or otherwise, result in a violation or breach of, or constitute a default under, any term or provision of any indenture, mortgage, deed of trust, lease, instrument, order, judgment, decree, rule, regulation, law, contract, agreement or any other restriction to which Owner is a party or to which Owner or any of its respective assets is subject or bound, (iii) will not result in the creation of any lien or other charge upon any assets of Owner, and (iv) will not result in any acceleration or termination of any loan or security interest agreement to which Owner is a party or to which Owner or the Assets is subject or bound. Except for Bankruptcy Court approval, no approval or consent of any person, firm or other entity or governmental body is or was required to be obtained by Owner for the authorization of this Agreement or the performance by Owner of the obligations of Owner under this Agreement. Owner as Trustee owns and possesses and will own and possess as of the auction all rights, title and interests in and to the Assets, including, without limitation free and clear of all liens, security interests, encumbrances, and other title defects or restrictions of any nature. Owner has and will have as of the auction the rights, power and capacity to assign, convey, deliver, sell and transfer the Assets free and clear of liens. All tangible Assets of Owner are in the possession or under the control of Owner, and all equipment included in the Assets is subject only to routine maintenance, and is fit and adequate for the purposes intended but is being sold AS IS, WHERE IS without any warranties, including no warranties of merchantability and no warranties of fitness for a particular purpose, excluding, however, warranties of title. Owner enjoys peaceful and quiet possession of the Assets pursuant to or by all of the deeds, bills of sale, leases, licenses and other agreements under which Owner is operating and engaged in business. To the best of Owner's knowledge, the Assets do not contain nor are they contaminated with any Hazardous Substance.

<u>Insurance</u>. Each party is responsible to keep in force all liability insurance coverages and vehicle insurance on their respective property sufficient to cover the full replacement cost thereof and for any loss on account of liability in an amount not less than $1,000,000 in the aggregate, and to

insure loss from all perils, acts of nature and the negligence of others and each of Owner and Auctioneer on its own behalf and on the behalf of its respective insurance carriers waives any and all rights to subrogation as to any claim which is or could be covered by property, casualty and/or liability insurance, including, without limitation, any loss occasioned by the acts including the negligent acts of the respective parties. **The Trustee will carry insurance for theft and vandalism of the equipment.**

Licenses. Auctioneer is a licensed auctioneer under the laws of the State of **Ohio, Montana and Pennsylvania.**

Indemnity. Owner agrees to indemnify Auctioneer and hold it harmless from any loss, claim, liability, cost or expense, including reasonable attorneys fees and costs of litigation, arising out of or in connection with any matter which Owner has warranted hereunder including without limitation, the claims of creditors of Owner or other claimants against Owner, unless the same is caused solely by the gross negligence, willful or wanton conduct of the Auctioneer or its agents or employees.

Construction, Integration and Binding Effect. This Agreement supersedes all prior discussions, negotiations, understandings, agreements, representations or other communications. This Agreement shall be binding upon and shall inure to the parties' respective heirs, executors, personal representatives, successors and assigns.

Confidentiality. Each party acknowledges that, in the course of performing its duties under this Agreement, it may obtain information which is of a confidential and proprietary nature. Such information may include, but is not limited to trade secrets, know-how, inventions, techniques, processes, programs, schematics, customer lists and financial information. Each party owns and intends to maintain its Ownership of all such information (the "Confidential Information"). Each party shall at all times, maintain in the strictest confidence and trust all such Confidential Information received, and shall not use such Confidential Information other than as contemplated under this Agreement.

Notices. All notices, requests, demands and other communications under this Agreement must be in writing and will be deemed duly given, unless otherwise expressly indicated to the contrary in this Agreement, (i) when personally delivered, (ii) upon receipt of a telephonic facsimile transmission with a confirmed telephonic transmission answer back, (iii) three (3) days after having been deposited in the United States mail, certified or registered, return receipt requested, postage prepaid, or (iv) one (1) business day after having been dispatched by a nationally recognized overnight courier service, addressed as set forth in this Agreement (or at such other address or number as is given in writing by a party after the Effective Date).

Counterparts. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original but all of which together will constitute one and the same document.

Captions and Section Headings. Captions and section headings are for convenience only, are not a part of this Agreement and may not be used in construing it.

Possession of Assets. Upon and after payment of the purchase price in full, possession of the Assets will be given to purchasers at auction on the day of the auction. All risk and loss with respect to the Assets will be borne by Owner until possession has been given to purchasers at auction.

Waivers. Any failure by Owner or by Auctioneer to comply with any of the obligations, agreements or conditions set forth in this Agreement may be waived by the other, but any such waiver will not be deemed a waiver of any other obligation, agreement or condition set forth in this Agreement.

Right of Inspection. From and after the Effective Date to the Closing, Owner will give to Auctioneer and the accountants and other representatives of Auctioneer, and prospective purchasers, full access during normal business hours to the Assets and maintenance records (if any) and will furnish copies of the documents and instruments as Auctioneer may reasonably request, including but not limited to the original vehicle titles. Such investigation will not affect the warranties and representations of Owner under this Agreement. All such information will be treated confidentially and will be used only for the purposes intended. If the transactions contemplated under this Agreement do not take place, all documents and other property of Owner will be returned and all disclosures and information given to Auctioneer as contemplated under this Agreement will be treated as confidential and not disclosed to others unless disclosed publicly by Owner or other third parties without fault on the part of Auctioneer, or unless otherwise required by law.

Amendment. This Agreement may not be amended, changed or modified in any respect whatsoever except in a writing signed by Auctioneer and Owner, and approved by the Bankruptcy Court.

Cooperation. Owner and Auctioneer shall cooperate in the effectuation of the transactions contemplated under this Agreement and to execute any and all additional documents to take such additional action as is reasonably necessary or appropriate for such purposes.

Entire Agreement. This Agreement, including any certificate, schedule, exhibit or other document delivered pursuant to its terms, constitutes the entire agreement between Owner and Auctioneer with regard to the auction of the Assets, together with the pleading and proposed order for Bankruptcy Court approval.

Governing Laws. This Agreement shall be governed by and construed in accordance with the United States Bankruptcy Code and Rules and the laws of the State of Ohio for Great Plains Exploration, LLC and the Commonwealth of Pennsylvania for Oz Gas, Ltd.

Publicity. Owner shall not cause or participate in any manner at any time (either prior or subsequent to the Closing) in the publication or announcement of the occurrence of any transaction contemplated by this Agreement or of the existence of this Agreement except with respect to: (a) advertising prepared by Auctioneer, (b) upon the specific prior written request by Auctioneer, or (c) as may be necessary or required by applicable federal bankruptcy law, including notice, service and legal publication in newspapers, legal journals and the Bankruptcy Court's website, in accordance with the applicable rules of Court.